# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### MONROE DIVISION

CLB PROPERTIES, INC.                        CIVIL ACTION NO. 16-1271

VERSUS                                       JUDGE ELIZABETH E. FOOTE

MRD OPERATING LLC, ET AL.                    MAGISTRATE JUDGE HAYES

## MEMORANDUM RULING

Before the Court are four motions filed in this matter: a motion to dismiss, filed by Defendant MRD Operating, LLC. ("MRD") [Record Document 3]; a motion to dismiss, filed by Defendant Hunter Temple ("Temple") [Record Document 4]; a motion for attorney's fees, filed by MRD and Temple [Record Document 5]; and a motion to remand and motion for attorney's fees, filed by the Plaintiff CLB Properties, Inc. ("CLB") [Record Document 10]. The respective parties have filed opposition and reply briefs to the aforementioned motions, all of which have been reviewed by the undersigned. For the reasons set forth below, MRD's motion to dismiss shall be granted in part and denied in part; Temple's motion to dismiss shall be granted; the Defendants' motion for attorney's fees shall be denied; and CLB's motion to remand and motion for attorney's fees shall be denied.

## Background

On June 1, 2016, CLB filed a class action petition in the Third Judicial District Court in Lincoln Parish, Louisiana, against MRD and Temple. Record Document 1-3. The Defendants removed the case to federal court, and subsequently filed a motion to dismiss. Record Documents 1-5 & 1-6. CLB voluntarily dismissed the case under Federal Rule of

Civil Procedure 41 on June 27, 2016.  Record Document 1-7 ("CLB I" ).

On August 8, 2016, CLB filed the instant suit in the Third Judicial District Court, Lincoln Parish, Louisiana—this time, not styled as a class action.  Record Document 1-8. ("CLB II").  The petition states that CLB is a landowner, lessor, and mineral interest holder who owns mineral interests in the form of royalties in Lincoln Parish. Id., p. 1. Defendant MRD is the operator and lessee of certain mineral interests in which CLB or its predecessors leased to MRD or its predecessors.  Id.  CLB claims that MRD was drilling and producing from wells, entitling CLB to royalty payments. Id., p. 2. CLB asserts that it demanded payment of royalties several times between January 2016 and June 2016, but to no avail. Id.  CLB further contends that MRD and Temple, MRD's land manager, conspired to threaten and coerce CLB into backing off demands for payment of royalties to which CLB was entitled. Id.  According to CLB, Temple told CLB's representative, Chris Bowman ("Bowman"), that CLB "had better back off" its demands to MRD for royalty payments, otherwise MRD would not sign a water contract to which the parties had orally agreed. Id., p. 3. CLB ultimately received payment of outstanding royalties, and contends that it is now entitled to interest on the late payments, as well as various damages under Louisiana's Mineral Code. Id., pp. 4-5. CLB also asserts that MRD's and Temple's "coercive and unfair conduct," as well as MRD's failure to report production to the Office of Conservation, violated the Louisiana Unfair Trade Practices Act ("LUTPA").  Id.

On September 8, 2016, Defendants removed this matter to federal court on the sole basis of diversity jurisdiction.  Record Document 1.  MRD is a Delaware limited-liability

company, comprised of a sole member, Memorial Resources Development Corporation, which is a Delaware corporation with its principal place of business in Texas. Record Document 1-10. CLB is a Louisiana corporation with its principal place of business in Louisiana. Record Document 1-8. Thus, the lawsuit would be completely diverse but for Defendant Temple, who is domiciled in Louisiana. Id.

As previously indicated, the parties have filed four separate, yet related, motions: motions to dismiss by MRD and Temple; a motion for attorney's fees by MRD and Temple; and a motion to remand based on lack of diversity jurisdiction and motion for attorney's fees by CLB. These will be addressed in turn below.

## Law and Analysis

I.  Defendants' Motions To Dismiss

A.  Federal Rule of Civil Procedure 12(b)(6) Standard.

Federal Rule of Civil Procedure 8 requires a short and plain statement of the claim showing the pleader is entitled to relief. A complaint is not required to contain detailed factual allegations, however, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007)(internal marks and citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2008) (internal marks omitted). "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. *Plausibility* does not equate to *possibility* or *probability*; it lies somewhere in between. See Iqbal, 556 U.S. at 678. This plausibility requirement "asks for more than a sheer possibility that a defendant has acted unlawfully." Id. However, the complaint cannot be simply "unadorned, the-defendant-unlawfully-harmed-me accusation[s]." Id. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. See Twombly, 550 U.S. at 555-56.

As the Fifth Circuit has explained, in order to survive a 12(b)(6) motion, "the complaint must contain either direct allegations on every material point necessary to sustain a recovery or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." Rios v. City of Del Rio, 444 F.3d 417, 420–21 (5th Cir. 2006) (internal marks and citation omitted). Moreover,

> a statement of facts that merely creates a suspicion that the pleader might have a right of action is insufficient. Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief. The court is not required to conjure up unpled allegations or construe elaborately arcane scripts to save a complaint. Further, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss.

Id. at 421 (internal marks and citations omitted). A court is compelled to dismiss an otherwise well-pleaded claim if it is premised upon an invalid legal theory. Neitzke v. Williams, 490 U.S. 319, 327 (1989).

B.    Analysis.

The Defendants have moved to dismiss CLB's entire case against them.  The Court finds that CLB has alleged three distinct claims:  (1) as against MRD, unpaid or underpaid royalties and unpaid interest, despite MRD's tender of some royalty payment on June 24, 2016; (2) as against MRD, untimely paid royalties where MRD's failure to pay was willful and without reasonable grounds; and (3) as against both Defendants, a LUTPA violation based on the water contract issue.  The Court disagrees with MRD and finds that CLB has not attempted to plead a distinct cause of action related to MRD's alleged failure to report production to the Office of Conservation.  Rather, the Court reads CLB's petition to state that MRD's failure to timely or accurately report has caused CLB to be unable to correctly calculate the amount of money it is owed, which is related to its claim of unpaid or underpaid royalties and interest.

For the following reasons, CLB's LUTPA claim against MRD and Temple must be dismissed, however, the remaining two claims (the claim for underpaid or unpaid royalties and interest and the claim for MRD's unreasonable failure to timely pay) will survive the motions to dismiss.

1.    Unpaid and underpaid royalties and interest.

CLB asserts that despite MRD's June 24, 2016 payment, MRD still has not tendered the full payment owed.  The petition states "On June 24, 2016, CLB's bank account was finally credited with the outstanding royalty payments . . . ." Record Document 1-8, p. 4.  However, "[t]o date, CLB has not received interest payments on the royalty payments in

accordance with Louisiana law." Id. Moreover, as discussed above, it is MRD's alleged failure to accurately and timely report production to the Office of Conservation that impacts this claim, as CLB asserts that it cannot discern whether the June royalty payment was, in fact, even correct. Record Document 1-8, p. 5. CLB further alleges that MRD's late payment was willful and without reasonable grounds, entitling it to increased damages under the Mineral Code. Record Documents 1-8 p. 4; 11, p. 7.

MRD, on the other hand, contends that CLB has no claim under the contract to unpaid royalties because those payments were made within the contract's 60-day notice and cure window. However, MRD seemingly concedes that CLB has a valid claim for unpaid interest on those royalty payments: "At a minimum, all of CLB's claims for relief beyond its claim for 'interest' should be dismissed." Record Document 19 at 2. Because, at a minimum, CLB's claim for unpaid interest is valid and viable (as conceded by MRD), and because CLB has stated a plausible claim for relief based on the incorrect payment of royalties, the Court denies this portion of MRD's motion to dismiss. So, too, does the Court decline to narrow the range of damages potentially available to CLB if it successfully prevails on its claim.

2.      Untimely Payment of Royalties without Reasonable Cause.

CLB asserts that royalty payments tendered on June 24 stemmed, in part, from production that occurred more than 90 days before payment was made. Because the contract requires payment to CLB within 90 days of production, CLB submits it has a claim for double damages, interest, and attorney's fees under Louisiana Revised Statute 31:139,

as the late payment was willful and without reasonable grounds.[1] That is, CLB claims that production royalties that were owed before March 25, 2016, and which were not paid until June 24, 2016, entitle it to additional damages under the Mineral Code. MRD responds that no damages are available because it paid the royalties within thirty days of demand, and in any event, even if damages were permissible, such a request is "extraordinary" in this case.

Paragraph 33 of the contract between the parties provides that "Lessee [MRD] shall account to and pay lessor [CLB] within ninety (90) days after the last calendar month day of the month in which the production is marketed and sold." Record Document 3-2, p. 5. Paragraph 35 then states,

> In the event Lessor considers that Lessee has not complied with all its obligations hereunder, . . . Lessor shall notify Lessee in writing, setting out specifically in what respects Lessee has breached this contract. Lessee shall then have sixty (60) days after receipt of said notice within which to meet or commence to meet all or any part of the breaches alleged by Lessor. The service of said notice shall be precedent to the bringing of any action by Lessor on said lease for any cause, and no such action shall be brought until the lapse of sixty (60) days after service of such notice on Lessee.

Id.

These contract provisions set forth the deadlines by which the parties must act: MRD is obligated to pay CLB within 90 days of production being marketed and sold, and if MRD fails to pay (or breaches another contractual obligation), CLB must provide written notice to MRD and allow MRD 60 days to comply with the lease. The contract is silent as

---

[1] CLB's petition does not seek dissolution of the lease as a remedy for this particular cause of action. See Record Document 1-8, p. 5.

to the parties' rights subsequent to the notice-and-cure procedure. Aside from extending the Mineral Code's default notice-and-cure window from 30 days to 60 days, the contract does not modify or restrict the lessee's rights under the Mineral Code to pursue damages for an alleged breach.

CLB's petition declares that CLB issued its first written demand for payment on May 25, 2016, Record Document 1-8, p. 3, and that MRD paid the "outstanding royalty payments" on June 24, 2016, id. at p. 4. MRD makes much of the fact that because it paid CLB's demand within 30 days (as opposed to the 60 days it was allowed under the contract), CLB has no claim against it for its initial failure to pay timely. In doing so, MRD glosses over, or rather disregards, the impact and significance of Louisiana Revised Statute 13:139, entitled "Effect of payment in response to notice," which provides:

> If the lessee pays the royalties due in response to the required notice, the remedy of dissolution shall be unavailable unless it be found that the original failure to pay was fraudulent. The court may award as damages double the amount of royalties due, interest on that sum from the date due, and a reasonable attorney's fee, provided the original failure to pay royalties was either fraudulent or willful and without reasonable grounds. In all other cases, such as mere oversight or neglect, damages shall be limited to interest on the royalties computed from the date due, and a reasonable attorney's fee if such interest is not paid within thirty days of written demand therefor.

La. R.S. § 31:139. The aforementioned provision applies in cases in which the lessee actually pays pursuant to a lessor's written demand, as MRD has allegedly done, and yet the statute clearly demonstrates that mere payment of the royalties due in response to a written demand does not end the lessee's potential exposure to additional damages. Thus, MRD's payment in response to CLB's written demand does not absolve it under the Mineral

Code. Rather, the Mineral Code clearly contemplates the possibility of additional damages being awarded to a lessor, despite the lessee's payment, in the event the nonpayment was fraudulent or willful and without reasonable grounds.

Plainly, whether MRD's reason for nonpayment was willful or without reasonable grounds, as alleged by CLB, involves a consideration of factual inquiries not before the Court at this time. MRD cites a plethora of cases to the Court to convince it that similarly-situated courts have declined to award penalties, attorney's fees, or interest when outstanding royalties were paid within 30 days of demand. Be that as it may, what other courts have awarded in other cases, situated in varying procedural postures, has no bearing on whether CLB has asserted a plausible cause of action that survives a motion to dismiss. Quite frankly, MRD has put the proverbial cart before the horse; the Court refuses to follow suit. Accordingly, because the provisions of the Mineral Code permit recovery of damages despite a lessee's payment in response to written demand, CLB may proceed with this claim.

### 3. LUTPA.

In its petition, CLB asserts that Temple's and MRD's conduct violated LUTPA, resulting in "substantial losses to CLB." Record Document 1-8, pp. 4-5. Both MRD and Temple seek to dismiss CLB's LUTPA claim. MRD's motion to dismiss submits that CLB cannot maintain a claim under LUTPA because CLB "admittedly already has its royalties . . . [and] therefore has no damages or, in LUTPA terms, any 'ascertainable loss.'" Record Document 3-1, p. 19. MRD seems to interpret CLB's LUTPA claim as related only to its

unpaid royalties, as opposed to also stemming from the water contract issue. This is an unduly narrow reading of CLB's petition. Temple's motion, on the other hand, recognizes that the LUTPA claim relates, in part, to the water contract. The Court finds that the LUTPA claim must be dismissed in its entirety.

LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." La. R.S. § 51:1405. "[W]hat constitutes an unfair trade practice is determined by the courts on a case-by-case basis," as the statute does not specify particular violations. Zeigler v. Hous. Auth. of New Orleans, 2012-1168 (La. App. 4 Cir. 4/24/13); 118 So. 3d 442, 453. "A practice is unfair when it offends established public policy and when the practice is unethical, oppressive, unscrupulous, or substantially injurious." Id. (citing Roustabouts, Inc. v. Hamer, 447 So. 2d 543, 548 (La. App. 1 Cir. 1984) (internal alterations omitted)). "[T]he range of prohibited practices under LUTPA is extremely narrow, as LUTPA prohibits only fraud, misrepresentation, and similar conduct, and not mere negligence." Quality Envtl. Processes v. I.P. Petroleum Co., 2013-1582 (La. 5/7/14); 144 So. 3d 1011, 1025. "Moreover, conduct that offends established public policy and is unethical is not necessarily a violation under LUTPA." Id. Only "egregious actions involving elements of fraud, misrepresentation, deception, or other unethical conduct will be sanctioned based on LUTPA." Cheramie Servs., Inc. v. Shell Deepwater Prod., 2009-1633 (La. 4/23/10); 35 So. 3d 1053, 1060. Furthermore, "[t]o sustain a cause of action under LUTPA, two things must be proved: (1) an ascertainable loss was suffered; and (2) the loss must result from another's use of

unfair methods of competition and unfair or deceptive acts or practices." <u>Carroll Insulation</u>
<u>& Window Co. v. Biomax Spray Foam Insulation</u>, 50,112 (La. App. 2 Cir 11/18/15); 180 So.
3d 518, 524.

CLB's petition alleges that, between January and June, 2016, CLB requested royalty
payments from MRD numerous times. Record Document 1-8, p. 2. CLB's representative,
Bowman, was allegedly told that payment was forthcoming. <u>Id.</u> CLB asserts that MRD
contacted it in May of 2016, asking if CLB would continue its contract to sell water to MRD
for its upcoming well fracturing jobs. <u>Id.</u> at pp. 2-3. Both parties verbally agreed to
contract for the purchase of water from one of CLB's ponds. <u>Id.</u> at p. 3. CLB alleges that
on May 26, 2016, Bowman received a phone call from Temple, asking Bowman to stop by
Temple's office in Ruston, Louisiana. <u>Id.</u> Bowman believed he was going to pick up the
signed water contract. <u>Id.</u> However, while at Temple's office, Temple allegedly told
Bowman that "he had better back off his demands to MRD for the royalty payments to CLB
because the water contract was sitting on the desk of [MRD's senior landman] Thomas
Landry . . . waiting to be signed." <u>Id.</u> Bowman asked Temple if this was an attempt to
extort him. <u>Id.</u> CLB further alleged that "Temple and MRD held good to their word"
because they did not give CLB the water contract it had been promised. <u>Id.</u> at p. 4.

The petition asserts that Defendants "MRD and Hunter Temple, acting for himself
and MRD, engaged in a conspiracy to threaten and coerce Plaintiff CLB into backing off
demands for payment of royalties to which CLB is legally and contractually entitled." <u>Id.</u>
at p. 2. As such, CLB contends that the "coercive and unfair conduct of the Defendants"

violated LUTPA, and resulted in "substantial losses to CLB." Id. at p. 4. CLB also asserts

that MRD's failure to timely pay royalties and failure to report production to the Office of

Conservation constitute a violation of LUTPA.

Turning first to the LUTPA claim stemming from the water contract issue, civil

"conspiracy by itself it not an actionable claim under Louisiana law." Crutcher-Tufts Res.,

Inc. v. Tufts, 2007-1556 (La. App. 4 Cir. 9/17/08); 992 So. 2d 1091, 1094 (citing Ross v.

Conoco, Inc., 2002-0299 (La. 10/15/02); 828 So. 2d 546, 551-52). "The actionable

element of a conspiracy claim is not the conspiracy itself but rather the tort that the

conspirators agree to perpetrate and actually commit in whole or in part." Prime Ins. Co.

v. Imperial Fire & Cas. Ins. Co., 2014-0323 (La. App. 4 Cir. 10/1/14); 151 So. 3d 670, 676.

CLB's petition identifies a violation of LUTPA as the underlying tort that forms the basis for

the alleged conspiracy claim against Temple. See id. at 677. "To establish a conspiracy,

a plaintiff is required to provide evidence of the requisite agreement between the parties."

Id. "Proof of a conspiracy can be by actual knowledge of both parties or overt actions with

another, or can be inferred from the knowledge of the alleged co-conspirator of the

impropriety of the actions taken by the other co-conspirator." Id. (emphasis in original

omitted). A "plaintiff must therefore prove an unlawful act and assistance or

encouragement that amounts to a conspiracy. The assistance or encouragement must be

of such quality and character that a jury would be permitted to infer from it an underlying

agreement and act that is the essence of the conspiracy." Chrysler Credit Corp. v. Whitney

Nat'l Bank, 51 F.3d 553, 557 (5th Cir. 1995) (internal citations omitted).

Here, the Court finds that a fact-finder could arguably hold that MRD and Temple conspired to perpetrate a violation of LUTPA. Temple is MRD's land manager and was a signed witness to the mineral lease between MRD and CLB. In its petition, CLB references a specific meeting that took place on May 26, 2016, between Bowman and Temple, during which Temple allegedly attempted to extort CLB on behalf of MRD. A jury or judge *might* infer from Temple's alleged conduct—threatening Bowman to stop demanding payments or MRD's senior landman would not sign the agreed-to water contract—that an underlying agreement to extort CLB was made between the Defendants.

However, even if the Defendants' conduct constitutes an unfair practice under LUTPA, Defendants have demonstrated that CLB has not stated a plausible claim for relief by showing that CLB cannot establish an ascertainable loss related to the water contract. See Strahan v. State of La., 92 2340 (La. App. 1 Cir. 3/11/94); 633 So. 2d 886, 887-88 ("[D]efendants were required to establish that they did not engage in unfair trade practices or deceptive acts or that plaintiff has suffered no ascertainable loss."). CLB's pleadings state that because of Defendants' coercive and unfair conduct, CLB did not receive the water contract it had been promised, resulting in "substantial losses." Attached to their notice of removal, Defendants put forth the water contract that CLB and MRD both signed. Record Document 1-2. Since CLB in fact *has* the water contract, Defendants argue that CLB cannot possibly claim damages for not receiving the water contract it was promised. The Court agrees that the existence of the contract negates CLB's claim of damages under LUTPA.

By CLB's own admission and as evidenced by the contract itself, CLB's representative, Bowman, signed the contract on May 17, 2016. Record Document 10-1, p. 5; Record Document 1-2. MRD subsequently signed the contract on June 3, 2016. Record Document 1-2, p. 3. In support of its claim that CLB did not receive the contract it was promised, CLB contends that it never received a copy of water contract, and that MRD has failed to record the water contract in land records as it has done in the past. Record Document 10-1, p. 4. It further alleges that MRD has acted "as if there does not exist any confected water contract" because it has not used or purchased water from CLB's ponds and is instead pumping water from land several miles farther away than CLB's ponds. Id. CLB further states that it was not even aware MRD had signed the contract until it was attached to Defendants' notice of removal. Id. It also claims that on June 24, 2016, MRD's counsel contacted another attorney in CLB's counsel's law firm (an attorney not working on this case) and informed him that MRD had not yet signed the water contract—three weeks after the purported signing date. Id.

Assuming, *arguendo*, that CLB could establish a conspiracy between Temple and MRD, CLB cannot establish an ascertainable loss. "Ascertainable loss" is a key element to a successful LUTPA claim. As Defendants point out, the signed contract gives MRD "sole discretion" to buy the quantity of water it "deems necessary" from CLB, at which time MRD will be obligated to pay CLB. MRD has not exercised its discretion. Record Document 1-2, p. 4. Thus, even if CLB's allegations are true and it can establish a conspiracy, CLB cannot demonstrate that it has suffered an ascertainable loss because the use and quantity of

water is within MRD's sole discretion. Defendants have provided uncontroverted evidence that CLB cannot establish a cause of action against them under LUTPA, and therefore this claim must be dismissed.

By dismissing the sole claim against Defendant Temple, the jurisdictional dispute is resolved. That is, with Temple dismissed from this suit, there is no dispute that the remaining parties (CLB and MRD) are completely diverse.[2] Thus, the Court may properly exercise subject matter jurisdiction over the remaining claims.

Turning next to CLB's LUTPA claim regarding MRD's failure to timely pay royalties and report production to the Office of Conservation, set forth in paragraph 27 of the petition, the Court finds that CLB has failed to sufficiently allege how these acts are viable claims under LUTPA. First, the allegations in the petition are wholly conclusory and fail to plead sufficient factual content to allow the Court to draw the inference that a LUTPA violation has occurred on the basis of the failure to timely pay royalties and the failure to report production. CLB's conclusory allegations, masked as factual conclusions, are insufficient to survive a motion to dismiss.

---

[2] CLB's pleadings do not specify the precise amount of damages in controversy. When the plaintiff's complaint does not allege a specific amount of damages, "the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds $75,000." Gebbia v. Wal-Mart Stores, Inc., 233 F.3d 880, 882 (5th Cir. 2000). CLB's petition demands interest on late paid royalties, dating back to January 2016; double royalties; treble damages; dissolution of the mineral leases; attorney's fees; and court costs. Defendants contend, and Plaintiff does not dispute, that the value of the lease alone is well in excess of $75,000. Record Document 1, p. 3. Thus, the undersigned finds that the amount in controversy more likely than not exceeds $75,000. See Herring v. Metro. Prop. & Cas. Ins. Co., No. 10-935, 2013 WL 3893282, *2 (E.D. La. July 26, 2013) (It is "well established" that penalties and attorney's fees "are to be included in considering the amount in controversy.")

Second, the Court notes that CLB has seemingly conceded it has no claim under LUTPA for failure to pay royalties and failure to report production, or in the alternative, it has intentionally winnowed down its LUTPA claim. Indeed, in its opposition to the motion to dismiss, CLB declares that the facts of its LUTPA claim are set forth in paragraphs 14 and 23 of the petition, while the cause of action is located in paragraph 24. These paragraphs relate <u>solely</u> to the water contract, discussed above. Because CLB failed to oppose the dismissal of its remaining LUTPA claim and has failed to allege more than conclusory allegations, the Court must dismiss this claim. Therefore, all LUTPA claims are dismissed with prejudice.

II.    Competing Motion for Attorney's Fees

A.    CLB's Motion for Attorney's Fees and Costs.

In its motion to remand [Record Document 10], Plaintiff requested attorney's fees and costs under 28 U.S.C. § 1447(c), which permits a court to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). As detailed above, the LUTPA claim against Temple cannot survive, and therefore, the Defendants were justified in removing this matter to federal court. Accordingly, CLB's motion for attorney's fees and costs incurred as a result of removal is denied.

B.    MRD's Motion for Attorney's Fees and Costs.

MRD has filed a separate motion for attorney's fees and costs, claiming it is entitled to reimbursement of the funds it spent in defending CLB I. [Record Document 5]. MRD

cites Federal Rule of Civil Procedure 41 in support of its motion. Rule 41(d) provides:

> If a plaintiff who previously dismissed an action in any court files an action based on or including the same claim against the same defendant, the court:
> (1) may order the plaintiff to pay all or part of the costs of that previous action; and
> (2) may stay the proceedings until the plaintiff has complied.

Fed. R. Civ. P. 41(d). Clearly, the plain wording of Rule 41 indicates the award of fees and costs is discretionary, not automatic. See also Meredith v. Stovall, 216 F.3d 1087, *1 (10th Cir. 2000).

Despite MRD's repeated characterization that CLB's lawsuits against it are vexatious and baseless, the Court finds that Rule 41(d) relief is not warranted. Particularly significant is that MRD filed a motion to dismiss CLB I, arguing in part that the suit was premature because CLB had not provided 30 days written notice of its demand for payment prior to filing suit. In response to MRD's motion to dismiss, CLB voluntarily dismissed CLB I. Over two months later it filed a second petition in state court, CLB II, which ostensibly cured the prematurity issue that existed in CLB I. Because CLB refiled its lawsuit in an attempt to correct an issue identified in MRD's motion to dismiss, the Court finds that CLB had good reason to dismiss the first complaint. Accordingly, MRD's motion for attorney's fees and costs under Rule 41 is denied.

III.   Caution to Counsel

Finally, the Court would be remiss if it failed to comment on the caustic tone expressed in many, if not all, of MRD's filings before the Court. This Court demands a level of professionalism from all attorneys who practice before it, and MRD's pleadings have

failed to satisfy this Court's standards and expectations. MRD's tenor and writing style frequently stray from professional and zealous advocacy to needlessly acrimonious and offensive rhetoric. Personal attacks on litigants seeking recourse for alleged wrongs, whether or not they are members of the bar, will not be tolerated. The undersigned joins in Judge S. Maurice Hicks, Jr.'s recent remarks to MRD's counsel: "recent motion practice . . . has been replete with hyperbole and unprofessional rhetoric. Such conduct must cease. . . . [S]uch conduct in the future [will] result in a monetary sanction of $500 per word." See United States v. Brad McIntyre, 3:15-cr-00218, Record Document 106. In short, the Court demands that more courtesy and professionalism be exhibited in the future.

## Conclusion

For the foregoing reasons,

**IT IS ORDERED** that MRD's motion to dismiss [Record Document 3] is **GRANTED IN PART AND DENIED IN PART**. CLB's claim for unpaid or underpaid royalties and interest, as well as its claim for damages stemming from untimely payment, survive the motion to dismiss. CLB's LUTPA claim against MRD is **dismissed with prejudice**.

**IT IS FURTHER ORDERED** that Temple's motion to dismiss [Record Document 4] is **GRANTED**. CLB's LUTPA claim against Temple is **dismissed with prejudice**. Temple is dismissed as a defendant from this lawsuit.

**IT IS FURTHER ORDERED** that MRD's motion for attorney's fees and costs [Record Document 5] be and is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the motion to remand filed by CLB [Record Document 10] be and is hereby **DENIED AS MOOT**. CLB's request for attorney's fees and costs is likewise **DENIED**.

**THUS DONE AND SIGNED** this 27th day of September, 2017.

_____
ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE